[Cite as *State ex rel. Casey v. Indus. Comm.*, 2022-Ohio-532.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Janet A. Casey,      :

         Relator,                      :

v.                                    :            No. 20AP-247

Industrial Commission of Ohio et al.,      :            (REGULAR CALENDAR)

         Respondents.             :

D E C I S I O N

Rendered on February 24, 2022

**On brief:** *The Bainbridge Firm, LLC*, and *Casaundra L. Johnson*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Denise A. Gary*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Janet A. Casey, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying Casey's request for the remaining 50 weeks of compensation for loss of use of her left lower extremity, and to enter an order awarding such compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny Casey's request for a writ of mandamus.

{¶ 3} Casey has filed the following two objections to the magistrate's decision:

> [I.] The magistrate erred in finding that the Staff Hearing Officer's finding that this Court affirmed the May 3, 2012 Staff Hearing Officer order that denied a prior request for functional loss of use of the left lower extremity was a harmless error.
>
> [II.] The magistrate erred in finding that the Staff Hearing Officer properly concluded that the request for total loss of use of the left lower extremity was res judicata and that there was insufficient basis to exercise continuing jurisdiction.

{¶ 4} On May 24, 2003, Casey sustained a work-related injury during the course of her employment with respondent Wheeler Enterprises, Inc. Casey's workers' compensation claim was allowed for contusion left foot; contusion left lower leg; left foot reflex sympathetic dystrophy; depressive disorder; and generalized anxiety disorder. Casey filed a motion requesting compensation for the functional loss of use of her left lower extremity on January 3, 2006. A district hearing officer ("DHO") denied the motion.

{¶ 5} On June 13, 2006, a staff hearing officer ("SHO") affirmed the DHO's order and denied Casey's motion. The SHO concluded Casey did not have a functional loss of use of her left lower extremity, as Casey was able to walk using her left leg. The commission refused further appeal, and Casey filed a complaint in mandamus asking this court to order the commission to vacate the June 13, 2006 SHO order. On September 6, 2007, in *State ex rel. Casey v. Indus. Comm.*, 10th Dist. No. 06AP-1251, 2007-Ohio-4591, this court denied Casey's request for a writ of mandamus.

{¶ 6} On August 2, 2007, the Ohio Bureau of Workers' Compensation ("BWC") issued an order finding that Casey had sustained a 100 percent loss of use of the left ankle due to ankylosis. The BWC awarded Casey permanent partial compensation for 150 weeks. On April 15, 2010, a DHO granted Casey's request for a power mobility wheelchair and car lift. The DHO found the motorized wheelchair medically reasonable and necessary as Casey's allowed conditions had "greatly affected her ability to ambulate." (Stip.R. at 91.)

{¶ 7} On October 27, 2011, Casey filed a motion requesting the remaining 50 weeks of compensation for functional loss of use of her left lower extremity. *See* R.C. 4123.57(B) (providing that "[f]or the loss of a leg," an injured worker may receive compensation for "two hundred weeks"). Casey supported the motion with reports from Sue Westfall, M.D., which stated that Casey had "essentially nearly lost the use of her left lower extremity" and

that Casey walked "very slowly relying on a walker." (Stip.R. at 94, 96.) Prasadarao B. Mukkamala, M.D., examined Casey on December 15, 2011 at the request of the BWC. Dr. Mukkamala found "no evidence of total permanent loss of use of the left lower extremity" as Casey "was able to ambulate with the use of a walker." (Stip.R. 122.) A DHO denied Casey's October 27, 2011 motion.

{¶ 8} On May 3, 2012, an SHO affirmed the DHO's order and denied Casey's October 27, 2011 motion. The SHO concluded that the commission had continuing jurisdiction to address Casey's motion, as the August 2, 2007 award for loss of use of the left ankle and the April 15, 2010 authorization for a motorized wheelchair constituted new and changed circumstances since the June 13, 2006 SHO order. The SHO relied on the reports from Drs. Mukkamala and Westfall to conclude that Casey had not lost the functional use of her left leg. The commission refused Casey's appeal from the SHO's May 3, 2012 order, and Casey did not pursue further review.

{¶ 9} On February 6, 2019, Casey filed a motion requesting the remaining 50 weeks of compensation for functional loss of use of her left leg above the knee. Casey supported the motion with a January 24, 2019 report from Dr. Westfall, stating that Casey was "in a wheel chair and [could] self propel with her arms, but [was] unable to use her legs for that." (Stip.R. at 212.) Dr. Westfall stated that Casey had "total loss of function of the left leg." (Stip.R. at 212.)

{¶ 10} Donato Borrillo, M.D., examined Casey on March 1, 2019 and concluded that Casey had suffered a functional loss of use of the left lower extremity. Joseph Grady, M.D., examined Casey on April 9, 2019 at the request of the BWC. Dr. Grady concluded Casey did not have "permanent loss of the entirety of the left leg such as completely useless," as she was "able to stand" on her left leg and to "transfer from bed to chair and between different chairs." (Stip.R. at 363.)

{¶ 11} On June 1, 2019, a DHO denied Casey's February 6, 2019 motion. On August 1, 2019, an SHO affirmed the DHO's order and denied Casey's February 6, 2019 motion. The SHO stated that the May 3, 2012 SHO order "previously denied the Injured Worker's request for a functional loss of use of the left lower extremity" and that the "[SHO's] decision was affirmed by the Tenth District Court of Appeals." (Stip.R. 375.) The SHO did not find a "sufficient basis to exercise continuing jurisdiction to alter that previous

Staff Hearing Officer finding." (Stip.R. at 375.)   As such, the SHO found Casey's 2019 motion for loss of use of the left leg barred by res judicata.

{¶ 12} Casey attempted to appeal the SHO's August 1, 2019 order, but the commission refused further appeal.  Casey filed a complaint in mandamus with this court on April 28, 2020.

{¶ 13} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, the relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief.  *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967), paragraph one of the syllabus; *State ex rel. Elliot v. Indus. Comm.*, 26 Ohio St.3d 76, 78 (1986).  A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by some evidence.  *Elliot* at 79, citing *State ex rel. Hutton v. Indus. Comm.*, 29 Ohio St.2d 9, 13 (1972).

{¶ 14} Casey's first objection asserts the magistrate erred by finding the statement in the SHO's August 1, 2019 order, indicating that this court upheld the May 3, 2012 SHO order, to be harmless error.  The magistrate noted that the SHO erred, as *Casey* upheld the June 13, 2006 order, not the May 3, 2012 order.  The magistrate found the error harmless because, regardless of whether this court affirmed the SHO's May 3, 2012 order, the May 3, 2012 order denied Casey's request for a functional loss of use of the left lower extremity and rendered the issue res judicata.  Indeed, as the May 3, 2012 order was a final order of the commission, the order rendered the loss of use of the left leg issue res judicata.  *See State ex rel. Tantarelli v. Decapua Ents., Inc.*, 156 Ohio St.3d 258, 2019-Ohio-517, ¶ 14 (stating that "a prior final order by the commission can become res judicata in future proceedings before the commission").

{¶ 15} Casey fails to demonstrate that, absent the SHO's reference to the May 3, 2012 order being upheld by this court, the outcome of the proceedings would have differed. As such, the magistrate properly found the SHO's mistaken reference to the May 3, 2012 order being upheld by this court to be harmless error.  *See* Civ.R. 61 (providing that a court "must disregard any error or defect in the proceeding which [did] not affect the substantial rights of the parties"); *Theobald v. Univ. of Cincinnati*, 160 Ohio App.3d 342, 2005-Ohio-1510, ¶ 17 (10th Dist.) (stating that "[w]hen avoidance of the error would not have changed

the outcome of the proceedings, then the error neither materially prejudices the complaining party nor affects a substantial right of the complaining party"). Casey's first objection is overruled.

{¶ 16} Casey's second objection asserts the magistrate erred by upholding the commission's conclusion that Casey's 2019 request for loss of use of the left lower extremity was barred by res judicata. The magistrate observed that the SHO's May 3, 2012 order relied on Dr. Mukkamala's 2011 report, which found that Casey could stand, balance, and ambulate using her left leg. The magistrate further observed that, although Dr. Westfall's January 24, 2019 report indicated Casey was in a wheelchair, Dr. Westfall did not state that Casey could no longer use her left leg to stand, balance, or ambulate. The magistrate noted that Dr. Westfall also did not explain how Casey's condition had deteriorated or why Casey's left leg was any different in 2019 than it was in 2006 or 2012. As such, the magistrate found no basis for the commission to exercise continuing jurisdiction based on new and changed circumstances.

{¶ 17} "Loss" within the meaning of R.C. 4123.57(B) includes not only amputation, but also the loss of use of the affected body part. *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364, ¶ 13, citing *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64 (1975). The loss of use need not be absolute if the claimant has suffered the permanent loss of use of the injured bodily member for all practical intents and purposes. *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, ¶ 12-14.

{¶ 18} "*Res judicata* operates 'to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction.' " *State ex rel. Kroger Co. v. Indus. Comm.*, 80 Ohio St.3d 649, 651 (1998), quoting *Office of Consumers' Counsel v. Pub. Util. Comm.*, 16 Ohio St.3d 9, 10 (1985). Res judicata applies to administrative proceedings including proceedings before the commission. *State ex rel. Marion Cty. N. Cent. Ohio Rehab. Ctr. v. Indus. Comm.*, 10th Dist. No. 03AP-325, 2004-Ohio-1411, ¶ 29, citing *Jacobs v. Teledyne, Inc.*, 39 Ohio St.3d 168 (1988). However, res judicata has limited application in workers' compensation matters because of the commission's continuing jurisdiction under R.C.

4123.52. *State ex rel. Toledo Refining Co. L.L.C. v. Indus. Comm.*, 10th Dist. No. 20AP-199, 2021-Ohio-2829, ¶ 69.

{¶ 19} The commission's continuing jurisdiction is itself limited and may be invoked only when there is evidence of: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by inferior tribunal. *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998). Evidence of new and changed circumstances entails evidence that "conditions have changed subsequent to the initial award," and not simply evidence which was "newly acquired." *State ex rel. Keith v. Indus. Comm.*, 62 Ohio St.3d 139, 141-42 (1991), citing *State ex rel. Bd. of Edn. v. Johnston*, 58 Ohio St.2d 132 (1979).

{¶ 20} Casey contends that her "need for and use of a wheelchair due to the inability to continue ambulating with a walker is certainly a new and changed circumstance." (Relator's Objs. at 4.) However, Casey was first authorized to receive the wheelchair in 2010, and the SHO relied on the wheelchair authorization as a new and changed circumstance in the May 3, 2012 order. Thus, Casey's need for and use of the wheelchair pre-dated the May 3, 2012 order. Although Casey contends she can no longer ambulate with a walker, the medical evidence in the record does not support such a finding. As the magistrate noted, Dr. Westfall's January 24, 2019 report did not state that Casey could no longer ambulate.

{¶ 21} Casey contends that, even if Dr. Westfall's report was insufficient to establish new and changed circumstances, the magistrate erred by failing to "address the sufficiency of Dr. Borrillo's report." (Relator's Objs. at 7.) Casey essentially asks this court to reweigh the evidence, something this court will not do in a mandamus action. "The commission is the exclusive fact-finder with sole responsibility to evaluate the weight and credibility of the evidence." *State ex rel. Perez v. Indus. Comm.*, 147 Ohio St.3d 383, 2016-Ohio-5084, ¶ 20, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20-21 (1987). As such, this court "cannot second guess the commission's judgments either as to witness credibility or on the proper weight to accord particular evidence." *State ex rel. Welsh Ents., Inc. v. Indus. Comm.*, 10th Dist. No. 19AP-127, 2020-Ohio-2801, ¶ 26.

{¶ 22} The SHO's August 1, 2019 order stated that "[a]ll the evidence was reviewed and considered." (Stip.R. at 375.) Thus, the commission reviewed and considered Drs.

Westfall's and Borrillo's 2019 reports and did not find evidence of new and changed circumstances in those reports. *See State ex rel. Digiacinto v. Indus. Comm.*, 159 Ohio St.3d 346, 2020-Ohio-707, ¶ 15. Notably, Dr. Borrillo's 2019 report stated that Casey's "left lower extremity [was] not even useful for pivoting and turning without the AFO [brace]." (Stip.R. at 357.) Thus, Dr. Borrillo's report indicates that Casey retained the functional ability to pivot and turn on her left leg while wearing an AFO brace. *See State ex rel. Richardson v. Indus. Comm.*, 10th Dist. No. 04AP-724, 2005-Ohio-2388, ¶ 10 (finding that because the relator could walk, "albeit with the help of a brace," the relator "ha[d] not sustained a total loss of use" of his foot); *State ex rel. Waite v. Indus. Comm.*, 10th Dist. No. 15AP-1018, 2016-Ohio-8496, ¶ 8.

{¶ 23} As Casey failed to present evidence of new and changed circumstances sufficient to invoke the commission's continuing jurisdiction, the commission properly concluded that res judicata barred Casey from attempting to relitigate the loss of use issue resolved by the SHO's May 3, 2012 order. Casey's second objection is overruled.

{¶ 24} On review of the magistrate's decision, an independent review of the record, and due consideration of Casey's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule Casey's objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled;*
*writ of mandamus denied.*

KLATT and MENTEL, JJ., concur.

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Janet A. Casey, | : | |
| Relator, | : | |
| v. | : | No. 20AP-247 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on May 12, 2021

*The Bainbridge Firm, LLC,* and *Casaundra L. Johnson,* for relator.

*Dave Yost,* Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 25} Relator, Janet A. Casey ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied claimant's request for the remaining 50 weeks of scheduled loss compensation for loss of use of her entire left leg, and to enter an order awarding the compensation.

Findings of Fact:

{¶ 26} 1. On May 24, 2003, claimant sustained an industrial injury when a large can of beans fell off a shelf and landed on her leg and foot in the course of her employment with respondent, Wheeler Enterprises, Inc., and her workers' compensation claim has been

allowed for the following conditions: contusion left foot; contusion left lower leg; left foot reflex sympathetic dystrophy; depressive disorder; and generalized anxiety disorder. The claim was later allowed for reflex sympathetic dystrophy ("RSD") right lower extremity in May 2015.

{¶ 27} 2. On January 11, 2005, the commission awarded claimant 15 percent of permanent partial disability ("PPD") compensation for her conditions of left foot contusion; left lower leg contusion; and RSD lower limb, left foot, based upon the medical reports of James E. Lundeen, M.D., and Mark T. Finneran, M.D.

{¶ 28} 3. On January 3, 2006, claimant filed a C-86 motion, requesting functional loss of use of her left lower leg for all practical intents and purposes, relying on the November 3, 2004, report, and August 13, and November 1, 2004, office notes of Thomas Porter, M.D.; the September 26, and November 25, 2005, office notes of Aleksey Prok, M.D.; and the August 26, 2005, report of Laurie Weaver, PT.

{¶ 29} 4. On January 26, 2006, claimant was examined by Alan Kohlhaas, M.D., at the request of the Ohio Bureau of Workers' Compensation ("BWC"). In a February 3, 2006, report, Dr. Kohlhaas found the following: claimant has difficulty above and beyond the usual impairment of this extremity from the allowed conditions; this amount is minimal and is five percent of her left lower extremity; this converts to a two percent whole person loss of use impairment; her inversion-type leg brace is in very good repair, with Velcro showing no signs of wear or lint pick-up; her semi-wheel walker shows no disturbance or wear on it; and she is able to ambulate to her vehicle without signs of hesitancy of full weight bearing on her left leg.

{¶ 30} 5. On March 22, 2006, after a hearing, a District Hearing Officer ("DHO") mailed an order denying claimant's January 3, 2006, motion for loss of use of the left lower extremity, finding the following: (1) Dr. Kohlhaas's January 26, 2006, report was persuasive; and (2) based upon the totality of the evidence in the file, the DHO was not persuaded that claimant demonstrated a functional loss of use of her left lower extremity. Claimant appealed.

{¶ 31} 6. On May 18, 2006, Richard Ward, M.D., examined claimant regarding her functional loss of use of her left leg, and authored a report in which he found the following: claimant has marked varus deformity of her left foot; claimant has no effective ankle motion

or motion in her toes; she has lost the functional use of her left lower extremity; clamant has marked hypersensitivity; claimant can only ambulate either using a walker with wheels and forearm supports or occasionally at home with a cane; and she has a functional loss of use of her left lower extremity.

{¶ 32} 7. On June 13, 2006, after a hearing, a staff hearing officer ("SHO") mailed an order (sometimes referred to by the parties and in the record by the "date typed" date of June 5, 2006), in which she denied claimant's request for functional loss of use of the left lower extremity and found the following: (1) Dr. Kohlhaas's January 26, 2006, report is persuasive; (2) Dr. Ward's May 18, 2006, report indicates that clamant will home ambulate short distances using a cane; and (3) claimant does not have a functional loss of use of her left lower extremity, as walking and weight bearing are major functions of a person's lower extremity, and she remains capable of weight bearing on that leg and of ambulating using her left leg. Claimant appealed.

{¶ 33} 8. On June 27, 2006, the commission refused further appeal.

{¶ 34} 9. On October 10, 2006, claimant filed an application for permanent total disability ("PTD") compensation.

{¶ 35} 10. On December 15, 2006, claimant filed in this court a complaint in mandamus in case No. 06AP-1251, in which she challenged the June 13, 2006, SHO order.

{¶ 36} 11. On February 22, 2007, James Ross, M.D., examined claimant with regard to her PTD application, and issued a report finding the following: claimant had marked ankylosis of the left foot in an extreme varus position; claimant had a subjective response to pain that makes a full exam impossible; her gait is highly unusual and uses a walker with forearm supports; the contusion of the left foot and ankle are soft tissue injuries that are expected to resolve and, thus, there is no impairment from these conditions; she now has no apparent use of the foot and ankle in the future, secondary to ankylosis; she has ongoing, uncontrolled pain in her left ankle; her left foot and ankle are completely impaired at the level of an amputation above the ankle; amputation and prosthesis would be a much better approach; and with maximum permanent deformity of the ankle joint she has 20 percent whole person impairment, plus 3 percent for pain, for a 23 percent whole person impairment.

{¶ 37} 12. On May 5, 2007, after a hearing, an SHO granted claimant's PTD application.

{¶ 38} 13. On June 6, 2007, claimant filed a C-86 motion, requesting the loss of use of the left foot, relying upon the February 22, 2007, report of Dr. Ross, and the February 13, and March 13, 2007 office notes of Christopher Konkyo, M.D.

{¶ 39} 14. On August 2, 2007, the BWC issued an order, in which it awarded loss of use of the left ankle due to ankylosis, relying upon Dr. Ross's report.

{¶ 40} 15. On September 6, 2007, in *State ex rel. Casey v. Indus. Comm.*, 10th Dist. No. 06AP-1251, 2007-Ohio-4591, this court issued a decision, in which we denied claimant's writ of mandamus and found the commission did not abuse its discretion when the SHO determined in the June 13, 2006, order that claimant failed to demonstrate a loss of use of her left lower extremity.

{¶ 41} 16. Claimant requested a power mobility wheelchair and car lift, and on April 15, 2010, a DHO granted the request.

{¶ 42} 17. In her February 4, 2010, letter, Sue Westfall, M.D., indicated that claimant's deformity of her left lower extremity is so significant that she walks with a very abnormal gait; in order to ambulate, she must walk bent over with her arms resting on cushions on top of a walker with grab bars; and she ambulates by dragging her left foot, and it gets in the way of her right foot.

{¶ 43} 18. In her August 5, 2010, letter, Dr. Westfall indicated that, due to her RSD and abnormal contractures of her left foot, claimant has "essentially nearly lost the use of her left lower extremity."

{¶ 44} 19. In an undated letter, possibly from August 3, 2011, Dr. Westfall indicated that claimant's RSD had progressed up the entire left leg due to her 2003 foot injury, and she has "very limited" use of that leg.

{¶ 45} 20. On October 27, 2011, claimant filed a C-86 motion, requesting the remaining 50 weeks of compensation for functional loss of use of her left lower extremity caused by chronic RSD, citing Dr. Konkyo's February 13, and March 13, 2007, progress notes; Dr. Ross's February 22, 2007 report; the November 10, 2009, report of Kenny Stowers, OTR/L; and the February 4, and August 5, 2010, narrative statements by Dr. Westfall.

{¶ 46} 21. On December 15, 2011, claimant was examined by Prasadaro B. Mukkamala, M.D., at the request of the BWC, regarding total loss of use of the left lower extremity, and in his December 16, 2011, report, he found the following: there was no evidence of total permanent loss of use of the left lower extremity; even though claimant has significant deformity with ankylosis of the left ankle and foot, she was able to ambulate with the use of a walker; the deformity was limited to the left ankle and foot; all other neurological functions are normal or near normal for the rest of the left lower extremity; she has near normal use of the left leg, but only partial use of the left foot; andRSD is currently dormant and not active.

{¶ 47} 22. On March 6, 2012, a DHO mailed an order denying claimant's request for functional loss of use of the left leg, finding the following: claimant requested the payment of this same award in 2006; by SHO order of June 5, 2006, the award was denied; the denial was upheld by the Tenth District Court of Appeals; claimant asserts that new circumstances exist to support the award in that, since 2006, claimant has been granted the loss of use of the left foot and the award of a motorized wheelchair; while it is clear that claimant suffers serious disability affecting the left leg, this evidence alone is not sufficient to establish a functional loss of use of the leg; claimant's citation to the reports from Dr. Westfall do not support a total loss of use of the left leg; Dr. Westfall indicates a nearly total loss but not a total loss; Dr. Westfall indicates that RSD is in the entire leg, but RSD is an allowed condition limited to the left foot; Dr. Westfall's comment indicated that claimant retains some use of the leg; the records from Dr. Westfall are from 2010 and 2011, and there are no recent records to document the current state of claimant's leg; Dr. Westfall does not discuss whether claimant continues to use the leg for ambulation or if she is limited to the power wheelchair; there is no indication in Dr. Mukkamala's December 16, 2011, report that claimant was using the wheelchair at the time of the evaluation; Dr. Mukkamala notes that RSD is currently dormant; Dr. Mukkamala indicates that claimant has not lost the use of her leg because she is able to use it to ambulate; and Dr. Mukkamala's report does not indicate that claimant was dragging her left foot. Claimant appealed.

{¶ 48} 23. In an April 27, 2012, clinical record, Dr. Westfall indicated that claimant was "severely functionally limited due to difficulty walking and having to use a walker."

{¶ 49} 24. On May 3, 2012, an SHO mailed an order affirming the DHO's order denying the compensation, finding the following: the order is based upon the December 16, 2011, report of Dr. Mukkamala; the reports of Dr. Westfall do not support an absolute total loss of use of the leg, as they indicated she has "limited" use and "nearly" loss of the use of the leg; and although this condition was previously denied in 2006, there is continuing jurisdiction for this consideration because there have been new and changed circumstances since 2006 – claimant has been awarded loss of use of the left foot and has been authorized to have a motorized wheelchair. Claimant appealed.

{¶ 50} 25. On May 23, 2012, the commission refused further appeal. Claimant did not file a complaint for writ of mandamus in this court relating to this motion.

{¶ 51} 26. In an August 2, 2012, letter, Dr. Westfall indicated that claimant's RSD had progressed up the left leg since she first met her in 2008; she had RSD of the entire left leg; she has "very limited use" of the left leg.

{¶ 52} 27. In an October 14, 2014, letter, Dr. Westfall indicated that the pain in claimant's left lower extremity has progressed up the left leg over the last two years; she has not achieved remission of the symptoms of the left lower extremity and continues to have very significant pain and severely impaired mobility; she no longer advocates for amputation and prosthesis; and claimant needs evaluation by an advanced pain management specialist.

{¶ 53} 28. On October 20, 2014, claimant filed a C-86 motion, requesting that her claim be additionally allowed for flow-through development of RSD of the right lower extremity and the remaining 50 weeks of compensation for functional loss of use of the left lower extremity due to RSD, relying upon the August 20, and October 14, 2014, reports of Dr. Westfall, as well as other medical evidence.

{¶ 54} 29. In a May 11, 2015, report, Dr. Westfall indicated that claimant bears weight on the left lateral malleolus, and the left foot protrudes over midline, causing claimant to adjust her gait to prevent tripping over the left foot.

{¶ 55} 30. On May 16, 2015, a DHO mailed a decision amending claimant's claim to include an additional allowance of RSD of the right lower extremity. Claimant dismissed her request for loss of use for RSD of the left lower leg at the DHO hearing.

{¶ 56} 31. In a December 31, 2015, letter, Dr. Westfall indicated that RSD is in the entire left leg, and her left foot was in a brace and was rotated 90 degrees.

{¶ 57} 32. On January 9, 2016, Donald Hura, M.D., examined claimant, and in his report opined that claimant had RSD to both lower extremities that has resulted in an inability to walk and will continue to worsen, resulting in a 63 percent whole person impairment.

{¶ 58} 33. On February 11, 2016, claimant filed a C-86 motion, in which she requested functional loss of use of her entire left leg for all practical intents and purposes as a result of chronic RSD. Claimant withdrew the motion on April 28, 2016.

{¶ 59} 34. On April 22, 2016, a DHO mailed an order, increasing claimant's PPD award from 32 percent to 40 percent. The DHO's order was affirmed by an SHO's order issued June 4, 2016.

{¶ 60} 35. In a January 24, 2019, letter, Dr. Westfall indicated that several years ago, claimant was able to ambulate by dragging her left leg and leaning on a walker, but now she is in a wheelchair and cannot propel with her legs; her left ankle is fixed and rotated 90 degrees; and she has total loss of function of the left leg.

{¶ 61} 36. On February 6, 2019, claimant filed the C-86 motion at issue in the present mandamus action, in which she requested the remaining 50 weeks of compensation, pursuant to R.C. 4123.57(B), for functional loss of use of her left leg above the knee, relying upon the January 9, 2016, report of Dr. Hura, and the January 24, 2019, December 31, 2015, May 11, 2015, August 2, 2012, August 3, 2011, August 5, 2010, and February 4, 2010, reports of Dr. Westfall.

{¶ 62} 37. On March 1, 2019, Donato Borrillo, M.D., examined claimant regarding the total loss of use of the left leg, and in his April 6, 2019, report, Dr. Borrillo found the following: claimant had an obvious 90-degree inward rotation of the left lower extremity; claimant was unable to bear weight without assistance on the extremity; for all practical purposes, clamant suffered a functional loss of use of the left lower extremity; it is obvious to even a layperson that the left lower extremity is useless and has a permanent 90-degree rotation; claimant requires assistance with transfer; claimant would be better off with the left lower extremity amputated; and given the RSD, claimant has a poor prognosis even if amputation were considered.

{¶ 63} 38. On April 9, 2019, at the request of the BWC, Joseph Grady, M.D., examined claimant, and in his report, found the following: claimant has significant contracture with inversion of the left foot and ankle; no contractures were noted in the left knee; there was no crepitus or instability of the knees; claimant reported some allodynia below the left knee, and there may be some evidence in the distal aspect of the left thigh; she was able to stand briefly to put on and remove her shorts for the examination; claimant has significant impairment of the left lower extremity but no permanent loss of the entirety of the left leg such as to be completely functionally useless for all practical purposes; claimant is able to stand, although presumably only briefly; she is able to transfer from bed to chair and between different chairs according to her history; there is not an absence of functional capability above the left knee; claimant's functionality is significantly limited because of the severe problems that she has with the distal portion of the left leg; and claimant has enough functional capability above the left knee to be able to stand on her lower extremities.

{¶ 64} 39. On April 18, 2019, the BWC referred claimant's February 6, 2019, motion to the commission, with the recommendation that her request for functional loss of use of the left leg be denied based on Dr. Grady's report.

{¶ 65} 40. On June 1, 2019, a DHO mailed an order denying claimant's February 6, 2019, request for total loss of use of the left leg, finding the following: (1) claimant was previously denied an award for the total loss of use of the left leg by the June 13, 2006, SHO order that was upheld by the Tenth District Court of Appeals; (2) the condition of functional loss of the left leg was then disallowed by a May 3, 2012, SHO order; (3) consequently, the requested award has already been denied by final decisions on the merits; and (4) there has been no request presented for the exercise of continuing jurisdiction in this matter. Claimant appealed.

{¶ 66} 41. On August 1, 2019, an SHO mailed an order, affirming the DHO's order denying claimant's request for functional loss of use of the left lower extremity and finding the following: (1) a May 3, 2012, SHO order previously denied claimant's request for a functional loss of use of the left lower extremity, which was affirmed by the Tenth District Court of Appeals; (2) there is not sufficient basis to exercise continuing jurisdiction to alter

that previous SHO finding; and (3) therefore, the request for total loss of use of the left "upper" (sic) extremity is res judicata. Claimant appealed the SHO's decision.

{¶ 67} 42. On August 22, 2019, the commission refused further appeal.

{¶ 68} 43. On April 28, 2020, claimant filed a complaint for writ of mandamus, requesting that this court vacate the commission's order that denied her request for the remaining 50 weeks of compensation for functional loss of use of the left leg, and to enter an order granting such compensation.

Conclusions of Law and Discussion:

{¶ 69} The magistrate recommends that this court deny claimant's request for writ of mandamus.

{¶ 70} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 71} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 72} Under the doctrine of res judicata, any issue that could have been raised on direct appeal, and yet was not, is not subject to review in subsequent proceedings. *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 16. Res judicata will preclude an original action in mandamus when the issue raised in the original action was raised or could have been raised in a prior appeal. *State ex rel. Dawson v. Summit Cty. Court of Common Pleas*, 146 Ohio St.3d 435, 2016-Ohio-1597, ¶ 9; *State ex rel. Ellis v. LaRose*, 7th Dist. No. 19 MA 0057, 2020-Ohio-1192, ¶ 9. Thus, once a competent tribunal enters a final judgment on the merits of a claim, res judicata precludes the re-litigation of a point of law or fact that was at issue in the former proceeding between the same parties. *State ex rel. Kroger Co. v.*

*Indus. Comm.*, 80 Ohio St.3d 649 (1998). The principle applies to proceedings before the commission: a prior final order by the commission can become res judicata in future proceedings before the commission. *State ex rel. Tantarelli v. Decapua Ents.*, 156 Ohio St.3d 258, 2019-Ohio-517, ¶ 14, citing *Kroger Co.* at 649, 651. However, R.C. 4123.52's grant to the commission of continuing jurisdiction over the cases before it limits the application of res judicata in commission cases. *State ex rel. B.O.C. Group, Gen. Motors Corp. v. Indus. Comm.*, 58 Ohio St.3d 199, 200 (1991).

{¶ 73} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A) contains a clear and broad grant of continuing jurisdiction to the commission. *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, ¶ 15. However, that jurisdiction is conditioned on specific criteria: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998).

{¶ 74} The commission has further explained the new and changed circumstances required to exercise continuing jurisdiction in Industrial Commission Resolution R18-1-06, which provides, in pertinent part:

> New and changed circumstances occurring subsequent to the date of the order from which reconsideration is sought. For example, there exists newly discovered evidence which by due diligence could not have been discovered and filed by the appellant prior to the date of the order from which reconsideration is sought. Newly discovered evidence shall be relevant to the issue in controversy but shall not be merely corroborative of evidence that was submitted prior to the date of the order from which reconsideration is sought.

R18-1-06(D)(1)(a).

{¶ 75} R.C. 4123.57(B) authorizes scheduled compensation to a claimant for the total loss of a body part, such as the total loss of an arm or leg. For the "loss of a leg," the statute provides for an award of 200 weeks of compensation. "Loss" within the meaning of the statute includes not only amputation, but also the loss of use of the affected body part.

*State ex rel. Wyrick v. Indus. Comm.*, 138 Ohio St.3d 465, 2014-Ohio-541, ¶ 10, citing *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364.

{¶ 76} To qualify for compensation under R.C. 4123.57(B), the loss of use need not be absolute if the claimant has "suffered the permanent loss of use of the injured bodily member for all practical intents and purposes." *Wyrick* at ¶ 10, citing *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, ¶ 12. However, a claimant may qualify for a total loss of use award under R.C. 4123.57(B) even if the body part retains some residual function. *State ex rel. Varney v. Indus. Comm.*, 143 Ohio St.3d 181, 2014-Ohio-5510, ¶ 16, citing *Alcoa*. "[T]he pivotal question is how much function remains." *State ex rel. Kroger Co. v. Johnson*, 128 Ohio St.3d 243, 2011-Ohio-530, ¶ 15. In *Alcoa*, the Supreme Court of Ohio noted that evidence indicated that the claimant continued to use what remained of his impaired limb for some minor functions: pushing open a car door, and tucking paperwork between the upper arm and chest; however, these minor residual functions did not preclude a scheduled award. *Alcoa* at ¶ 6.

{¶ 77} An injured worker claiming loss of use under R.C. 4123.57(B) bears the burden of showing that the loss of use is complete and permanent. *State ex rel. Carter v. Indus. Comm.*, 10th Dist. No. 09AP-30, 2009-Ohio-5547. Medical evidence of disability or loss may be impeached by evidence of actual work or other physical activity inconsistent with that assessment. *State ex. rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316.

{¶ 78} In the present case, claimant presents several arguments in mandamus. First, claimant argues that the SHO's order contains mistakes of fact and constitutes an abuse of discretion. Claimant asserts that the SHO's August 1, 2019, order denied her request for functional loss of use of the left leg based upon the fact that the SHO's May 3, 2012, order, which previously denied the same request, was affirmed by the Tenth District Court of Appeals; however, claimant points out, the prior Tenth District Court of Appeals decision addressing the issue of loss of use of the left leg related to the June 13, 2006, SHO order, not the May 3, 2012, SHO order. Claimant further points out that she never filed a mandamus action with this court with respect to the May 3, 2012, order; thus, the SHO's finding was a clear mistake of fact that invalidates the res judicata finding in the August 1, 2019, SHO order.

{¶ 79} Claimant also argues that the commission abused its discretion when it found that the request for total loss of use was res judicata because her February 6, 2019, loss of use request was predicated on a worsening of her allowed conditions and was based on new evidence from Drs. Westfall and Borrillo. She claims the loss-of-use issue before the SHO in 2019 was based on two different degrees of disability at two different times and, therefore, was not precluded by res judicata.

{¶ 80} Claimant further contends that the SHO committed a mistake of fact in finding that the request for total loss of use of the left "upper" extremity was res judicata because the issue of total loss of use of the left upper extremity has never been addressed or adjudicated, and her claim is not allowed for any left upper extremity conditions. Claimant points out that, although the SHO correctly identified the issue as involving the left lower extremity in other parts of the order, the SHO's finding regarding res judicata is contained in only one sentence, and that was the sentence that incorrectly addressed the left upper extremity.

{¶ 81} Claimant also argues that the commission abused its discretion when it denied claimant's request for functional loss of use of the left lower extremity on the basis that there were insufficient grounds to exercise continuing jurisdiction. Claimant asserts that, notwithstanding the SHO's error regarding the appeal, or lack thereof, of the May 3, 2012, SHO order, the SHO erred in relying on the 2012 SHO order without consideration of the new and changed circumstances that developed after the 2012 decision. Claimant contests the SHO's reliance on Dr. Mukkamala's opinion that claimant was able to walk on her left leg and Dr. Westfall's failure to opine there was a total loss of use of the leg. Instead, claimant contends, the medical evidence establishes that the RSD in her left lower extremity worsened after the May 2012, SHO order. Claimant also asserts that the SHO's cursory findings regarding both continuing jurisdiction and res judicata run afoul of the commission's duty to cite the evidence relied upon and explain the basis of its decision pursuant to *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 206 (1991) and *State ex rel. Mitchell v. Robbins & Myers*, 6 Ohio St.3d 481 (1983).

{¶ 82} Initially, the magistrate finds the SHO's reference to "upper" extremity was merely a clerical error. In general, a clerical mistake is "the type of error identified with mistakes in transcription" rather than with any legal decision or conclusion. *Dentsply*

*Internatl., Inc. v. Kostas*, 26 Ohio App.3d 116, 118 (1985). Stated another way, clerical errors consist of "blunders in execution," while substantive errors are "instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner." *Rowell v. Smith*, 186 Ohio App.3d 717, 2010-Ohio-260, ¶ 15, quoting *Wardeh v. Altabchi*, 158 Ohio App.3d 325, 2004-Ohio-4423, ¶ 10, quoting *Kuehn v. Kuehn*, 55 Ohio App.3d 245, 247 (1988). In the present matter, even claimant concedes that the SHO correctly identified the issue as involving the left lower extremity, the left upper extremity has never been addressed or adjudicated, and her claim is not allowed for any left upper extremity conditions. In the SHO's decision, the SHO properly listed the allowed conditions, and also properly referred to the left lower extremity in two other paragraphs, with the incorrect reference to the upper left extremity only appearing once in a single paragraph. There is nothing in the SHO's order that leads the magistrate to believe the SHO mistakenly believed the left "upper" extremity was at issue. Notwithstanding this error, a remand to the commission to require it to correct "upper" to "lower" would be a vain act because the same result would be inevitable. *State ex rel. Little v. Indus. Comm.*, 10th Dist. No. 11AP-1110, 2013-Ohio-282, ¶ 7, quoting *State ex rel. Menough v. Indus. Comm.*, 10th Dist. No. 01AP-1031, 2002-Ohio-3253 (harmless error when result would be the same).

{¶ 83} With regard claimant's argument that the SHO made an error in her August 1, 2019, order when finding that our decision in *Janet Casey* regarded the May 3, 2012, SHO order, claimant is correct. *Janet Casey* concerned the June 13, 2006, SHO order. This court did not issue any decision in mandamus affirming the SHO's May 3, 2012, order. However, this error is harmless and does not invalidate the SHO's August 1, 2019, order, rendering any remand to the commission for correction of a vain act. Whether this court affirmed the SHO's May 3, 2012, order in a mandamus action does not detract from the SHO's finding that the May 3, 2012, SHO order already denied claimant's request for a functional loss of use of the left lower extremity. The SHO's two conclusions that (1) there is not a sufficient basis to exercise continuing jurisdiction to alter the previous SHO finding, and (2) the request for total loss of use of the left lower extremity is res judicata based upon that previous May 3, 2012, SHO finding, remain valid grounds for denial, regardless of the error.

The DHO similarly found in the June 1, 2019, order that claimant was previously denied the condition of functional loss of use of the left leg in the May 3, 2012, order, as well as noting the previous denial of an award for the total loss of use of the left leg by the June 13, 2006, SHO order (and correctly noting that decision was affirmed by this court in *Janet Casey*). The DHO then reached the same res judicata conclusion as the SHO did subsequently, finding that the same requested award had already been denied by final decisions on the merits.

{¶ 84} In the SHO's August 1, 2019, order, the SHO specifically relied upon the May 3, 2012, SHO order, which in turn relied upon the December 16, 2011, report of Dr. Mukkamala and the reports of Dr. Westfall. In Dr. Mukkamala's report, he found: (1) there was no evidence of total permanent loss of use of the left lower extremity; (2) claimant was able to ambulate with the use of a walker; (3) claimant has near normal use of the left leg, but only partial use of the left foot; (4) all other neurological functions are normal or near normal for the rest of the left lower extremity; and (5) RSD is currently dormant and not active. In Dr. Westfall's reports and letters of January 24, 2019, December 31, 2015, May 11, 2015, August 2, 2012, August 3, 2011, August 5, 2010, and February 4, 2010, Dr. Westfall found that: (1) claimant walked with a very abnormal gait, but still ambulates by dragging her foot; (2) she has "nearly" lost the use of her left lower extremity; (3) she has "very limited" use of her left leg; (4) and she bears weight on the left lateral malleolus. These reports supported the SHO's and DHO's 2019 conclusions.

{¶ 85} Although Dr. Westfall stated in her January 24, 2019, report that claimant was in a wheelchair, cannot propel the wheelchair with her legs, and she has total loss of function of the left leg, Dr. Westfall did not endeavor to explain how claimant's condition had deteriorated and why her leg was any different at the time of the 2019 DHO and SHO orders than it was at the time of the 2006 and 2012 orders. Claimant also was not granted any new allowed conditions for the leg since 2012. Finally, the mere use of a wheelchair, brace, or other corrective device does not automatically entitle a claimant to an award of total loss of use. *See State ex rel. Cartnal v. Indus. Comm.*, 10th Dist. No. 12AP-963, 2013-Ohio-5297, ¶ 55-58, citing *State ex rel. Bushatz v. Indus. Comm.*, 10th Dist. No. 10AP-541, 2011-Ohio-2613 (no total loss of use of foot when claimant was able to walk provided that he wore a foot-drop brace). Here, according to Dr. Mukkamala's report, claimant could still

stand, balance, and ambulate using her foot/leg. There was no indication in Dr. Westfall's January 24, 2019, report that she could no longer use her foot and leg for these limited purposes, despite using a wheelchair. Therefore, there was no basis for continuing jurisdiction based upon new and changed circumstances, and res judicata applied to prevent re-litigation of the same issue before the DHO and SHO in 2019. The commission stated what evidence it relied upon and provided a brief explanation as to why it was rejecting claimant's claims based upon res judicata and a lack of continuing jurisdiction, in compliance with *Noll* and *Mitchell.*

{¶ 86} Accordingly, it is the magistrate's decision that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).