[Cite as *State ex rel. Huber v. Indus. Comm.*, 2025-Ohio-1029.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Perry C. Huber, | : | |
| Relator, | : | |
| | : | No. 23AP-164 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

---

D E C I S I O N

Rendered on March 25, 2025.

---

**On brief:** *The Bainbridge Firm, LLC, Casaundra L. Johnson,* and *Kara S. Dolan*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *David M. Canale*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Perry C. Huber, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its orders denying temporary total disability ("TTD") compensation and to issue an order granting TTD compensation beginning May 6, 2022.

{¶ 2} This court referred this matter to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate considered the action on its merits and issued a decision that includes findings of fact and conclusions of law, which is appended hereto. The magistrate determined that, contrary to relator's assertions, the issue of relator's entitlement to TTD compensation for the period from May 6 through September 6, 2022 was addressed by the September 9, 2022 staff hearing

officer's ("SHO") order, including all allowed conditions at that time, and relator has not shown the commission erred in applying res judicata to deny a second request for this same period. The magistrate further determined that Dr. Robert Whitehead's report was some evidence on which the commission could rely in denying TTD compensation for the period from September 7 through November 21, 2022, and thus, the commission did not abuse its discretion in doing so. Thus, the magistrate has recommended that this court deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed the following two objections to the magistrate's decision:

> [1.] The Magistrate erred in finding that the Commission did not abuse its discretion when it applied res judicata to deny a second request for temporary total disability compensation for newly allowed conditions.

> [2.] The Magistrate erred in finding that the report of Dr. White (sic) is "some evidence" to support denial of TTD compensation.

{¶ 4} Because relator has filed objections, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Relator has not objected to the factual findings of the magistrate and, upon our review, we find no error pertaining to same. We thus turn to whether the magistrate has appropriately applied the law in this matter.

{¶ 5} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show he has a clear legal right to the relief sought, and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1984). "A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record." *State ex rel. Metz v. GTC, Inc.*, 2015-Ohio-1348, ¶ 11, citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). The court will not disturb the commission's decision if there is "some evidence" to support it. *State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202 (1988); *State ex rel. Bennett v. Aldi, Inc.*, 2016-Ohio-83, ¶ 6 (10th Dist.). " 'Where a commission order is adequately explained and based on some evidence, . . . the order will not be disturbed as manifesting an abuse of discretion.' " *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 2006-Ohio-2287, ¶ 9, quoting *State ex rel. Mobley v. Indus. Comm.*,

78 Ohio St.3d 579, 584 (1997). Thus, so long as some evidence supports the commission's decision, this court must defer to the commission.

{¶ 6} In making its determination, the resolution of disputed facts is within the final jurisdiction of the commission. *State ex rel. Allerton v. Indus. Comm.*, 69 Ohio St.2d 396, 397 (1982). Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 7} Relevant to the instant matter, we begin by noting that TTD compensation awarded, pursuant to R.C. 4123.56, is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occur (1) the claimant has returned to work, (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment, (3) work within the physical capabilities of the claimant is made available by the employer or another employer, or (4) the claimant has reached maximum medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 8} Turning to relator's objections, in his first objection, relator contends the magistrate erred in finding that the commission did not abuse its discretion when it applied res judicata to deny a second request for TTD compensation for newly allowed conditions. We disagree.

{¶ 9} First, it is undisputed that when the SHO heard and decided the issue of TTD compensation for the time period of May 6 through September 6, 2022, the SHO specified all of relator's allowed conditions in relator's claims as of the date of the hearing on September 9, 2022. These included the newly allowed conditions upon which relator is now focused. (Stip. at 411-12.)

{¶ 10} It is likewise undisputed that in support of his request for TTD compensation, based on the newly allowed conditions for this timeframe, relator submitted a MEDCO-14 form issued by William Anderson, D.C., dated September 1, 2022, which certified that relator was incapable of working not only due to the original allowed condition, but also because of the newly allowed additional conditions. (Stip. at 409-10.) Thus, the magistrate properly found that the issue of TTD compensation for all allowed conditions in the claim was considered by the SHO, including TTD compensation for the newly allowed additional

conditions. (Mag.'s Decision at 12.) Based on the magistrate's review of the medical evidence cited by the SHO, as well as the other medical evidence in the record, the magistrate rightly determined that the SHO properly found that realtor had not met his burden of proof to establish that he was entitled to TTD compensation for either the original allowed conditions, or the newly allowed additional conditions. (Mag.'s Decision at 12.)

{¶ 11} Moreover, it is beyond dispute that after the SHO denied relator's request for TTD compensation for the period of May 6 through September 6, 2022 via the SHO's order dated September 9, 2022, *relator failed to challenge the SHO's finding*. (Stip. at 411-12.) Accordingly, the commission's subsequent determination denying relator's second request for TTD compensation for the identical time period was entirely proper based upon principles of res judicata, and the magistrate rightly found this to be so.

{¶ 12} Accordingly, we overrule relator's first objection.

{¶ 13} In his second objection, relator asserts the magistrate erred in finding that the report of Dr. Whitehead is "some evidence" to support denial of TTD compensation for the period of September 7 through November 7, 2022. We do not agree.

{¶ 14} In this objection, relator continues to insist–as he did in his brief–that the office notes of Dr. Scott Stephens and the C-9s requesting an MRI on November 7, 2022 and left shoulder surgery on December 16, 2022 undermine the evidentiary value of Dr. Whitehead's October 5, 2022 report. But as the magistrate correctly pointed out, the December 16, 2022 request for surgery on relator's shoulder was premised on a condition not allowed in relator's claim (bicipital tendinitis of the left shoulder). Although mention of the allowed condition of "lysis of obstructed adhesions" was also made in a December 14, 2022 office note discussing the surgery, it is clear the surgery requested was based on a condition that was not allowed in the claim at that time. (Stip. at 488.)

{¶ 15} Moreover, it is well-settled that questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *Teece*, 68 Ohio St.2d 165. "[T]he mere existence of conflicting evidence does not render the commission's determination of a factual question an abuse of discretion." *State ex rel. Bonnlander v. Hamon*, 2020-Ohio-4269, ¶ 24. Therefore, regarding the denial of TTD compensation for the period from September 7 through November 21, 2022, the magistrate correctly found that Dr. Whitehead's report was some evidence upon which the commission

could properly rely, and relator has not demonstrated a clear legal right to the requested relief or that the commission was under a duty to provide it.

{¶ 16} Accordingly, we overrule relator's second objection.

{¶ 17} Based on the foregoing, we overrule relator's objections to the magistrate's decision. Having conducted an examination of the magistrate's decision and an independent review of the evidence, pursuant to Civ. R. 53, we find the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that relator is not entitled to a writ of mandamus. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny relator's request for a writ of mandamus.

*Objections overruled*;
*writ of mandamus denied.*

BOGGS and LELAND, JJ., concur.

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Perry C. Huber, | : | |
| Relator, | : | |
| v. | : | No.  23AP-164 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

MAGISTRATE'S  DECISION

Rendered on October 18, 2024

*The Bainbridge Firm, LLC*, and *Casaundra L. Johnson*, for relator.

*Dave Yost*, Attorney General, and *David M. Canale*, for respondent Industrial Commission of Ohio.

*Marty Law Office LLC*, and *Corie Ann Marty*, for respondent Lang Masonry Contractors, Inc.

IN MANDAMUS

{¶ 18} Relator Perry C. Huber seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying Huber's requests for temporary total disability ("TTD") compensation and to issue a new order granting TTD compensation. For the following reasons, the magistrate recommends that this court deny Huber's request for a writ of mandamus.

## I. Findings of Fact

{¶ 19} 1. Huber sustained an injury in the course of and arising out of his employment with respondent Lang Masonry Contractors, Inc. ("Lang Masonry") on

July 14, 2020. While working overhead with a piece of equipment, Huber felt a pop in his left shoulder resulting in pain and decreased movement.

{¶ 20} 2. Following the submission of a first report of injury, occupational disease or death ("FROI-1") form on July 21, 2020, the Bureau of Workers' Compensation ("BWC") issued an order on July 24, 2020 initially allowing Huber's workers' compensation claim for the conditions of strain unspecified muscle, fascia and tendon at shoulder/upper arm, left shoulder; and adhesive capsulitis of left shoulder.

{¶ 21} 3. Lang Masonry and Huber executed a series of salary continuation agreement ("C-55 agreement") forms beginning with a C-55 agreement signed by Huber on August 17, 2020. In the C-55 agreements, Lang Masonry agreed to pay Huber's salary at a specified rate in lieu of TTD compensation for a period of time that began on the date of injury and was extended through January 31, 2021.

{¶ 22} 4. John S. Henry, M.D., performed approved surgery on Huber's left shoulder on October 27, 2020. Dr. Henry submitted a physician's report of work ability ("MEDCO-14") form dated November 9, 2020 indicating that Huber was unable to perform the job held on the date of injury for the period of restricted duty from July 30 through December 14, 2020.

{¶ 23} 5. The BWC issued an order on December 30, 2020 allowing the claim for the additional condition of cervical sprain.

{¶ 24} 6. In a MEDCO-14 dated February 4, 2021, Dr. Henry indicated Huber was possibly able to return to work on February 24, 2021 with the restrictions of no overhead lifting or lifting more than 10 pounds. In a MEDCO-14 dated March 4, 2021, Dr. Henry continued the restrictions and indicated a possible return to work date of March 3, 2021. Huber returned to light duty work consistent with the restrictions beginning in March 2021.

{¶ 25} 7. Dr. Henry submitted a request for medical service reimbursement or recommendation for additional conditions for industrial injury or occupational disease ("C-9") form dated April 28, 2021 requesting the allowance of the additional condition of radiculopathy C6-C7. The request was ultimately denied in an order issued by a commission district hearing officer ("DHO") on August 3, 2021.

{¶ 26} 8. William P. Anderson, D.C., who became Huber's physician of record, conducted an examination of Huber on February 18, 2022. Based on the examination and

review of MRIs of the left shoulder and cervical spine, Dr. Anderson recommended allowing the following additional conditions in the claim:

> C6-C7 disc protrusion (substantial aggravation of pre-existing condition); left supraspinatus partial thickness tear (direct causation); labral tear, left shoulder (direct causation); left shoulder subacromial bursitis (direct causation); left supraspinatus tendinosis (direct causation); left infraspinatus tendinosis (direct causation); left intra-articular biceps tendinosis (direct causation); left acromioclavicular osteoarthritis (substantial aggravation of pre-existing condition.

(Stip. at 217.)

{¶ 27} 9. Following the initial examination, Dr. Anderson submitted a series of MEDCO-14 forms. In a MEDCO-14 dated February 18, 2022, Dr. Anderson indicated Huber was working at the time and provided restrictions for the period from February 18 through April 18, 2022.

{¶ 28} 10. Huber, through counsel, filed a C-86 motion dated April 6, 2022 requesting the claim be amended to allow the additional conditions of left shoulder labral tear, left partial thickness tear supraspinatus tendon, left shoulder subacromial bursitis, substantial aggravation of pre-existing left acromioclavicular osteoarthritis, and substantial aggravation of pre-existing C6-C7 disc protrusion. The BWC referred Huber's April 6, 2022 motion to the commission in an order dated April 29, 2022.

{¶ 29} 11. In a C-86 motion dated May 9, 2022, Huber, through counsel, requested the payment of TTD compensation from April 7 through June 20, 2022 and to continue. Huber's motion was accompanied by a request for temporary total compensation ("C-84") form dated April 10, 2022 in which Huber stated that he last worked on April 7, 2022. The motion was supported in part by MEDCO-14 forms completed by Dr. Anderson on April 13 and May 4, 2022.

{¶ 30} In the April 13, 2022 MEDCO-14, Dr. Anderson indicated Huber was able to work "REG" hours per week and continued to certify work restrictions through June 20, 2022. (Stip. at 262.) In the May 4, 2022 MEDCO-14, Dr. Anderson indicated Huber was not able to work any hours for the period from May 4 through June 20, 2022. Dr. Anderson noted that Huber had "attempted to continue with the 'ground work' restrictions and had even recently attempted to utilize a 'staircase-type ladder' due to shoulder restrictions." (Stip. at 264.) Dr. Anderson stated that "[e]ven the initial attempt

with reaching forward to climb the stairs immediately produced increased pain" and that "other 'ground work' activities have caused a gradual[] escalation in pain and depreciating functionality." (Stip. at 264.) The April 13 and May 4, 2022 MEDCO-14 forms included the conditions allowed at that time.

{¶ 31} 12. In a MEDCO-14 dated June 9, 2022, Dr. Anderson indicated Huber was unable to work from June 20 through August 15, 2022.

{¶ 32} 13. Howard A. Pinsky, D.O., conducted an independent medical examination of Huber on June 22, 2022 for purposes of evaluating Huber's request for TTD compensation. In a report issued the same day, Dr. Pinsky acknowledged the conditions that were allowed and disallowed at that time in the claim. The opinions expressed in Dr. Pinsky's report was not based on the additional conditions requested in Huber's April 6, 2022 motion. Dr. Pinsky noted Huber's statement that he last worked on May 6, 2022, a different date from what was contained in the April 10, 2022 C-84 request.

{¶ 33} Based solely on the allowed conditions in the claim, Dr. Pinsky did not find objective or subjective indications to support ongoing TTD compensation from May 6 through June 19, 2022. Dr. Pinsky found Huber had reached maximum medical improvement ("MMI") based on the fact that Huber "had multiple evaluations regarding the shoulder and no specific recommendation for further treatment has been recorded for the shoulder and neck" and that "[t]here is further no specific incident that occurred in May 2022 to initiate a new period of [TTD] compensation." (Stip. at 298.) Dr. Pinsky found as follows:

> Mr. Huber is now 18 months after his surgical management. He has no recommendation for additional interventions regarding the shoulder. He has had issues that have been presented in the cervical spine for conditions that are not allowed to the claim. He has no follow[-]up or future treatment plan for his shoulder or his neck for the allowed conditions. His subjective physical complaints far outweigh any objective findings present.

(Stip. at 299.)

{¶ 34} 14. Marcy Dickey, D.O., conducted an independent medical examination of Huber on June 15, 2022 for purposes of evaluating Huber's request for allowance of additional conditions. Dr. Dickey opined that Huber had the additional conditions requested in the April 6, 2022 motion. However, Dr. Dickey found that the additional

conditions were not attributable to the claim by any means of causation. Dr. Dickey also found that Huber had a zero percent whole person impairment based solely on the allowed conditions.

{¶ 35} 15. Huber's April 6, 2022 request for allowance of additional conditions was heard by a DHO on July 7, 2022. On July 9, 2022, the DHO issued an order granting in part and denying in part Huber's request. Specifically, the DHO granted the request for additional allowance of the conditions of left partial thickness tear supraspinatus tendon and left shoulder subacromial bursitis. The DHO denied the requested allowance of the conditions of left shoulder labral tear, substantial aggravation of preexisting left acromioclavicular osteoarthritis, and substantial aggravation of preexisting C6-C7 disc protrusion.

{¶ 36} 16. Huber filed a second C-84 form dated July 14, 2022. In this request for TTD compensation, Huber indicated he last worked on May 5, 2022, one day earlier than noted in Dr. Pinsky's report. In a MEDCO-14 also dated July 14, 2022, Dr. Anderson certified Huber was unable to work from May 6 through September 12, 2022 based only on the conditions that were allowed prior to the July 9, 2022 DHO order.

{¶ 37} 17. A DHO held a hearing on Huber's May 9, 2022 request for TTD compensation on July 28, 2022. In an order issued August 2, 2022, the DHO granted Huber's request based on the conditions allowed at that time. The DHO noted Huber's attorney clarified at the hearing that the request for TTD compensation was limited to the period beginning May 6, 2022.

{¶ 38} 18. On August 15, 2022, a commission staff hearing officer ("SHO") held a hearing on appeals of the July 9, 2022 DHO order filed by both Lang Masonry and Huber. In an order issued August 17, 2022, the SHO modified the DHO's order. The SHO affirmed the DHO's allowance of the additional conditions of left partial thickness tear supraspinatus tendon and left shoulder subacromial bursitis. The SHO also allowed the condition of substantial aggravation of preexisting left acromioclavicular osteoarthritis. The SHO affirmed the denial of the conditions of left shoulder labral tear and substantial aggravation of preexisting C6-C7 disc protrusion.

{¶ 39} 19. On August 31, 2022, the commission refused Huber's appeal of the August 17, 2022 SHO order.

{¶ 40} 20. In a MEDCO-14 dated September 1, 2022, Dr. Anderson certified Huber was unable to work from May 6 through September 12, 2022. Dr. Anderson indicated that Huber was prevented from working as a result of two of the previously allowed conditions listed in the April 13, May 4, and July 14, 2022 MEDCO-14 forms in addition to those conditions newly allowed under the August 17, 2022 SHO order.

{¶ 41} 21. On September 6, 2022, an SHO heard an appeal filed by Lang Masonry from the August 2, 2022 DHO order granting TTD compensation. In an order issued September 9, 2022, the SHO vacated the DHO's order and denied Huber's May 9, 2022 request for TTD compensation. In support of this determination, the SHO made the following findings: "The [SHO] is not persuaded that [Huber's] allowed conditions again rendered him temporarily and totally disabled beginning on [May 6, 2022]." (Stip. at 411.) In making this decision, the SHO relied solely on Dr. Pinsky's June 22, 2022 report. The SHO listed all of the conditions allowed and disallowed in the claim at that time, including those conditions addressed in the August 17, 2022 SHO order.

{¶ 42} 22. Huber again requested TTD compensation in a third C-84 form dated September 8, 2022. In a MEDCO-14 also dated September 8, 2022, Dr. Anderson certified Huber was unable to work from September 8 through November 14, 2022 based on all allowed conditions in the claim.

{¶ 43} 23. In a C-86 motion dated September 15, 2022, Huber, through counsel, requested payment of TTD compensation "for the newly allowed left acromioclavicular [o]steoarthritis from May 6, 2022, through the present and to continue." (Stip. at 422.) In addition to medical evidence in the record, Huber pointed to the August 17, 2022 SHO order that granted Huber's request to allow additional conditions. In a fourth C-84 form dated September 14, 2022, Huber requested a new period of TTD compensation beginning September 7, 2022.

{¶ 44} 24. On September 28, 2022, the commission refused an appeal filed by Huber from the September 9, 2022 SHO order denying TTD compensation.

{¶ 45} 25. Robert D. Whitehead, M.D., completed a MEDCO-21 physician review for purposes of evaluating Huber's request for TTD compensation from September 7 to November 13, 2022. Dr. Whitehead found the record failed to support Huber's request for TTD compensation for the period from September 7 through November 13, 2022 as reasonably related to the allowed conditions in the claim. Dr. Whitehead also found that

Huber had "reached MMI at this time if no further surgeries have been plan[ned]." (Stip. at 450.)

{¶ 46} 26. In a C-9 form dated November 7, 2022, Scott Stephens, M.D., requested an MRI of Huber's left shoulder.

{¶ 47} 27. Huber again requested TTD compensation in a fifth C-84 form dated November 8, 2022. In a MEDCO-14 dated November 8, 2022, Dr. Anderson certified Huber was unable to work from November 8, 2022 through February 6, 2023.

{¶ 48} 28. A DHO held a hearing on Huber's new request for TTD compensation on November 21, 2022. In an order issued on November 23, 2022, the DHO denied Huber's September 15, 2022 C-84 request and C-86 motion. Noting that Huber requested TTD compensation from May 6, 2022 and to continue, the DHO addressed the request in two parts: (1) from May 6 through September 6, 2022, and (2) from September 7, 2022 through the date of the hearing. The DHO found that the first period of TTD compensation was barred by res judicata because the request for the same period had been previously denied by the September 9, 2022 SHO order. With regard to the second period of TTD compensation from September 7, 2022 and to continue, the DHO denied the request based on the October 5, 2022 report of Dr. Whitehead.

{¶ 49} 29. Huber was examined by Dr. Stephens on December 9, 2022. In a report signed on December 14, 2022, Dr. Stephens reviewed an MRI that "demonstrates partial rotator cuff tear as well as biceps tendonitis." (Stip. at 487.) As a result, Dr. Stephens diagnosed Huber with left shoulder biceps tendonitis, partial rotator cuff tear, and adhesive capsulitis. With regard to treatment, Dr. Stephens indicated the following: "Plan is to get approval for biceps tendonitis and possible for shoulder scope consisting of rotator cuff repair, open versus arthroscopic biceps tenodesis as well as lysis of obstructed adhesions." (Stip. at 488.)

{¶ 50} 30. In a C-9 form dated December 16, 2022, Dr. Stephens recommended additional allowance of the condition of bicipital tendinitis of left shoulder to the claim.

{¶ 51} 31. Huber's appeal from the November 23, 2022 DHO order was heard by an SHO on January 10, 2023. In an order issued on January 13, 2023, the SHO affirmed the DHO's order and denied Huber's request for TTD compensation. With regard to the request for TTD compensation for the period from May 6 through September 6, 2022, the SHO made the following findings:

> The [SHO] finds that this period of time was previously addressed pursuant to [SHO] order issued [September 9 2022] and is res judicata. The conditions additionally allowed by [DHO] order issued [July 9, 2022] and [SHO] order issued [August 17, 2022], had already been allowed at the time of the [SHO] order of [September 6, 2022]. Therefore there are no new or changed circumstances now in order to re-address the [TTD] from [May 6, 2022] through [September 6, 2022].

(Stip. at 496.) With regard to request for TTD compensation for the period from September 7 through November 21, 2022, the SHO made the following findings:

> There are no new and changed circumstances that would render [Huber] again temporarily and totally disabled from [September 7, 2022]. This finding is based on the report of Robert Whitehead, M.D., dated [October 5, 2022]. Dr. Whitehead opines that there has been no recent and no new objective evidence to support [TTD] with regards to the left shoulder or cervical spine. Dr. Whitehead opines that a preponderance of the evidence fails to support temporary total compensation from [September 7, 2022] as being reasonably related to the allowed conditions in this claim and that no subsequent surgical treatment is planned for the allowed conditions in this claim at this time.

(Stip. at 496-97.)

{¶ 52} 32. On February 1, 2023, the commission refused an appeal filed by Huber from the January 13, 2023 SHO order.

{¶ 53} 33. Huber commenced this action by filing his complaint for writ of mandamus on March 10, 2023.

## II. Discussion and Conclusions of Law

{¶ 54} Huber seeks a writ of mandamus ordering the commission to grant him TTD compensation beginning May 6, 2022.

## A. Requirements for Mandamus

{¶ 55} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, Huber must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law,

including when the commission has abused its discretion in carrying out its duties." *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). Additionally, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 174 Ohio St.3d 414, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

## B. Temporary Total Disability Compensation

{¶ 56} Workers' compensation benefits in the form of TTD compensation are governed by R.C. 4123.56. The purpose of TTD compensation is to compensate a worker for the loss of earnings incurred while they heal from an injury and are unable to return to work. *Ewell v. Montgomery Cty. Court of Common Pleas*, 10th Dist. No. 13AP-1078, 2014-Ohio-3047, ¶ 13; *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 380 (2000). In order to be eligible to receive TTD compensation, an injured worker must meet the requirements of R.C. 4123.56(F), which provides as follows:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F). From its text, R.C. 4123.56(F) makes plain that a worker seeking to receive TTD compensation under the statute must be: (1) unable to work as the direct result of an impairment arising from an injury or occupational disease, and (2) otherwise qualified. *See State ex rel. Autozone Stores, Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-294, 2023-Ohio-633, ¶ 35.

{¶ 57} As indicated by the second requirement of R.C. 4123.56(F), a person seeking benefits under the statute must meet other qualifications. With regard to TTD compensation, R.C. 4123.56(A) contains the following additional qualifications:

> [P]ayment [for TTD] shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

R.C. 4123.56(A). *See Ewell* at ¶ 13; *Autozone* at ¶ 29. Thus, "R.C. 4123.56(A) designates maximum medical improvement as one of four statutory bases for denying temporary total disability compensation." *State ex rel. Barnes v. Indus. Comm.*, 114 Ohio St.3d 444, 2007-Ohio-4557, ¶ 14. MMI is defined as "a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function." Ohio Adm.Code 4121-3-32(A)(1).

## C. Analysis

{¶ 58} Huber argues the commission abused its discretion by denying his request for TTD compensation in the January 13, 2023 SHO order for two reasons. First, Huber argues the SHO erroneously applied the doctrine of res judicata to deny TTD compensation for the period from May 6 through September 6, 2022—the same period of time that was denied by the September 9, 2022 SHO order. Second, Huber argues the report of Dr. Whitehead was not some evidence to support the denial of TTD compensation for the period from September 7 through November 21, 2022.

*1. Whether It Was Error to Apply Res Judicata in the January 13, 2023 SHO Order*

{¶ 59} In general terms, "[r]es judicata operates 'to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction.' " *State ex rel. Kroger Co. v. Indus. Comm.*, 80 Ohio St.3d 649, 651 (1998), quoting *Office of Consumers' Counsel v. Public Utilities Comm.*, 16 Ohio St. 3d 9, 10 (1985). Res judicata applies to administrative

proceedings including proceedings before the commission." *State ex rel. Casey v. Indus. Comm. of Ohio*, 10th Dist. No. 20AP-247, 2022-Ohio-532, ¶ 18. Generally, however, the continuing jurisdiction of the commission under R.C. 4123.52 limits the application of res judicata in workers' compensation matters. *State ex rel. Tantarelli v. Decapua Ents.*, 156 Ohio St.3d 258, 2019-Ohio-517, ¶ 14. *See also State ex rel. Quest Diagnostics, Inc. v. Indus. Comm.*, 10th Dist. No. 10AP-153, 2011-Ohio-78, ¶ 15 (stating that "[u]nless the claim has expired by operation of law, the commission has jurisdiction to consider issues *not previously addressed*" (Emphasis added.)).

{¶ 60} Huber argues res judicata does not apply in this case because the September 15, 2022 request for TTD compensation was based on additional conditions that were allowed as a result of the August 17, 2022 SHO order. Huber argues these newly allowed conditions were not considered by Dr. Pinsky in his June 22, 2022 report. As the SHO relied on Dr. Pinsky's report in the September 9, 2022 order that denied Huber's original May 9, 2022 motion for TTD compensation, Huber argues that the newly allowed conditions preclude application of res judicata.

{¶ 61} Initially, it is important to note that the addition of new conditions to a claim does not necessarily guarantee the payment of a new period of TTD compensation. *State ex rel. Ritzie v. Reece-Campbell, Inc.*, 146 Ohio St.3d 259, 2015-Ohio-5224, ¶ 16. As this court has previously observed, "newly allowed conditions constitute new and changed circumstances which *may* warrant the payment of a new period of TTD compensation *provided that* all other requirements for the payment of TTD compensation are met." (Emphasis in original.) *State ex rel. Wyrebaugh v. Indus. Comm.*, 10th Dist. No. 06AP-610, 2007-Ohio-1939, ¶ 37. Yet, even when new conditions are allowed in the claim, "the burden remains on the claimant to establish that the newly allowed conditions render claimant temporarily and totally disabled." *Id.*

{¶ 62} It is true that certain additional conditions—namely, left partial thickness tear supraspinatus tendon, left shoulder subacromial bursitis, and substantial aggravation of preexisting left acromioclavicular osteoarthritis—were not allowed at the time of Dr. Pinsky's report. However, the commission does not speak through the medical reports on which it relies, but rather through its orders. *See State ex rel. Yellow Freight Sys. v. Indus. Comm. of Ohio*, 71 Ohio St.3d 139, 142 (1994). In the September 9, 2022 order denying the original motion for TTD compensation, the SHO listed all of the

conditions allowed in the claim at that time, including the conditions newly allowed under the August 17, 2022 SHO order. Additionally, in the findings in support of the determination, the SHO referenced the allowed conditions which had previously been listed. The SHO stated that the SHO was "not persuaded that [Huber's] *allowed conditions* again rendered him temporarily and totally disabled beginning on [May 6, 2022]." (Emphasis added.) (Stip. at 411.)

{¶ 63} Prior to the September 6, 2022 hearing before the SHO, Huber's treating physician listed the newly allowed conditions as conditions preventing Huber from returning to the job duties held on the date of the injury. In the September 1, 2022 MEDCO-14, Dr. Anderson indicated that Huber was unable to work from May 6 until September 12, 2022. Dr. Anderson listed two of the conditions previously cited as rendering Huber temporarily and totally disabled in the May 4, June 9, and July 14, 2022 MEDCO-14 forms in addition to all three conditions that were newly allowed under the August 17, 2022 SHO order. However, the MEDCO-14 does not list any new clinical findings from Dr. Anderson to support finding that these newly allowed conditions contributed to rendering Huber temporarily and totally disabled. Instead, the MEDCO-14 cites the "exam note of 07/14/2022," which is the same exam note that supported the July 14, 2020 MEDCO-14 in which Dr. Anderson did not list any of the newly allowed conditions as rendering Huber temporarily and totally disabled. (Stip. at 410.) In addition to this same exam note, Dr. Anderson referenced the "DHO/SHO Order of 08/15/2022" as supporting the clinical findings. (Stip. at 410.)

{¶ 64} Since Dr. Anderson clearly indicated prior to the September 6, 2022 SHO hearing that the newly allowed conditions, among others, were rendering Huber unable to work for the period of time in question, those newly allowed conditions were at issue at the September 6, 2022 SHO hearing. As a result, it was Huber's burden, as the claimant, to establish that the newly allowed conditions, in addition to the others that were cited, rendered him temporarily and totally disabled. *See Wyrebaugh* at ¶ 37. Huber could have submitted additional medical evidence to support the request related to the newly allowed conditions. No transcript from the September 6, 2022 hearing is present in the record of this case, nor does Huber contend that other evidence was submitted at the hearing to support finding that the newly allowed conditions rendered Huber unable to work. *See generally State ex rel. Ritzie v. Reece-Campbell, Inc.*, 10th Dist. No. 13AP-669, 2014-

Ohio-2782, ¶ 8. Huber also could have specifically challenged the SHO's determination regarding the newly allowed conditions in his appeal of the September 9, 2022 order to the commission. Huber, however, did not make such a challenge, but rather asserted only that "[t]his decision would serve as an injustice." (Stip. at 421.) *See State ex rel. Hodge v. Ryan*, 131 Ohio St.3d 357, 2012-Ohio-999, ¶ 6 (stating that "mandamus will not issue when an individual has a plain and adequate remedy in the ordinary course of law" and noting that "[a]dministrative remedies are plain and adequate remedies that preclude mandamus").

{¶ 65} Despite Huber's acknowledgement that the SHO did include in the September 9, 2022 order all conditions allowed at that time, Huber nevertheless argues that the SHO's order "does not otherwise indicate that these conditions were considered in the decision adjudicating a request for TTD compensation that was filed before these conditions were added to the claim." (Huber's Brief at 31-32.) In addition to listing all of the allowed and disallowed conditions in the claim, the SHO explained the basis for the decision and stated that "[a]ll of the evidence was reviewed and considered in rendering this decision." (Stip. at 411.) Among the evidence in the record at that time was Dr. Anderson's September 1, 2022 MEDCO-14, which listed, among others, the conditions newly allowed by the August 17, 2022 SHO order. Huber does not demonstrate that the SHO was required to separately provide reasoning specific to each of the allowed conditions in the claim after listing all of the allowed conditions.

{¶ 66} In conclusion, Huber contends that the additional conditions allowed in the claim on August 17, 2022 were new and changed circumstances that preclude application of res judicata to his second request for TTD compensation for the same period of time. Contrary to this contention, the issue of Huber's entitlement to TTD compensation for the period from May 6 through September 6, 2022 was addressed by the September 9, 2022 SHO order, including *all* allowed conditions at that time. Huber has not shown the commission erred in applying res judicata to deny a second request for this same period of time. *Compare State ex rel. B.O.C. Group*, 58 Ohio St.3d 199, 201 (1991). As a result, Huber cannot demonstrate a clear legal right to vacate the SHO's findings with regard to res judicata or that the commission was under a clear legal duty to provide such relief.

*2. Whether Dr. Whitehead's Report Is Some Evidence to Support Denial of TTD Compensation*

{¶ 67} Second, Huber argues the SHO committed an abuse of discretion in the January 13, 2023 order by relying on the report of Dr. Whitehead to support the denial of TTD compensation for the period from September 7 through November 21, 2022. In support of this argument, Huber argues that Dr. Whitehead "was unaware that several C-9s had recently been approved, including the request for a cervical MRI, and whose opinion was rendered before surgery was requested in December 2022." (Huber's Brief at 32.) Huber argues that these developments occurring "contemporaneous with and subsequent to" Dr. Whitehead's report "undermine the basis of his opinions." (Huber's Brief at 32-33.)

{¶ 68} In the October 5, 2022 MEDCO-21, Dr. Whitehead found that the medical evidence on record did not support Huber's request for TTD compensation for the period in question. Huber is correct that following the issuance of Dr. Whitehead's report, additional C-9 forms requesting diagnostic services and treatment were filed. Dr. Stephens requested an MRI on November 7, 2022 and left shoulder surgery on December 16, 2022. Importantly, however, Dr. Stephens's December 16, 2022 request was based on a condition that was not allowed at that time, i.e., bicipital tendinitis of left shoulder. In a December 14, 2022 office note, Dr. Stephens indicated that the "[p]lan is to get approval for biceps tendinitis and possible for shoulder scope consisting of rotator cuff repair, open versus arthroscopic biceps tenodesis as well as lysis of obstructed adhesions." (Stip. at 488.) Thus, Dr. Stephens's contemporaneous notes reflect that the surgery in question was based on a condition that was not allowed in the claim at that time. It is further noteworthy that the condition of bicipital tendinitis was not listed in the January 13, 2023 SHO order.

{¶ 69} Therefore, although these requests were in the record at the time the SHO issued the January 13, 2023 order, it cannot be said that the additional requested services caused Dr. Whitehead's opinion to be without any evidentiary value. *Compare State ex rel. Sellards v. Indus. Comm.*, 108 Ohio St.3d 306, 2006-Ohio-1058, ¶ 20 (finding physician's indication of MMI was "premature" considering the "commission's contemporaneous approval of [a] treatment program" for condition allowed in the claim). As Dr. Whitehead's report was some evidence on which the commission could rely, it cannot be said that the commission abused its discretion in denying TTD compensation

for the period from September 7 through November 21, 2022. *See Casey*, 2022-Ohio-532, at ¶ 21, quoting *State ex rel. Welsh Ents., Inc. v. Indus. Comm.*, 10th Dist. No. 19AP-127, 2020-Ohio-2801, ¶ 26 (stating that "this court 'cannot second guess the commission's judgments either as to witness credibility or on the proper weight to accord particular evidence' "); *State ex rel. Bonnlander v. Hamon*, 161 Ohio St.3d 373, 2020-Ohio-4269, ¶ 24 (stating that "the mere existence of conflicting evidence does not render the commission's determination of a factual question an abuse of discretion"). Therefore, with regard to the denial of TTD compensation for the period from September 7 through November 21, 2022, Huber has not demonstrated a clear legal right to the requested relief or that the commission was under a duty to provide it.

**D. Conclusion**

{¶ 70} Accordingly, it is the decision and recommendation of the magistrate that Huber's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.